IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Mansa Musa Yusef Banshee, #73461, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Jon Ozmint, Director of the South )<br>Carolina Department of Corrections; )<br>John Davis, Medical Director; Stan )<br>Burtt, Warden; Michael Sribnick, Dr.; )<br>Gray A. Kocher, Dr.; Martha Gedert )<br>& D. Kelly, RNs, )<br>)<br>Defendants. )<br>_____) | Civil Action No. 6:04-23099-TLW-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.  This matter is before the court on the motions to dismiss and for summary judgment filed by defendants Ozmint, Davis, Burtt, Sribnick, Gedert and Kelly.[1]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff filed his complaint on November 29, 2004, alleging that the defendants were deliberately indifferent to his serious medical needs.  On March 2, 2005, the defendants filed a motion to dismiss.  By order filed on March 7, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the dismissal

---

[1]Defendant Kocher was never served in this action.

procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed a response to the defendants' motion to dismiss on April 8, 2005. On April 15, 2005, the defendants filed a motion for summary judgment. By order filed on April 19, 2005, pursuant to *Roseboro*, the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed a response to the defendants' motion for summary judgment on May 20, 2005.

## FACTUAL BACKGROUND

The plaintiff is incarcerated currently at Evans Correctional Institution. This action is premised on the plaintiff's incarceration at Lieber Correctional Institution ("Lieber").

According to his complaint, while incarcerated, the plaintiff was diagnosed with glaucoma in August 1994 for which he began treatment with Timoptic eye drops for both eyes. He received follow-up examinations in November 1996 and in February 1998.

The plaintiff alleges that he was not receiving any medication in October 1998 when Dr. Kocher examined him and prescribed Timoptic eye drops for his left eye only. At a follow-up examination in January 1999, Dr. Kocher then prescribed Cosopt for the plaintiff to use in his left eye twice daily. However, the plaintiff claims he was unaware of this prescription and does not recall receiving this medication. In March 1999, Dr. Kocher performed argon laser trabeculoplasty to relieve the internal pressure on the plaintiff's eyes. At a follow-up appointment in June 1999, Dr. Kocher prescribed Timoptic again, but the plaintiff claims that there was a seven-month period when he did not receive this medication. The plaintiff further alleges that he "always had a problem" receiving Timoptic and other medications in a timely manner. He complains that his Timoptic eye drops were substituted with Bausch & Lomb eye drops without examination. When he noticed

2

discoloration of his left eye, he claims he was told that the substitution of eye drops was not the problem.

The plaintiff claims that he received no response to his November 2000 request for his medication to be refilled. He claims that he spoke with Nurse Dunmyers about the issue and that the nurse stapled extra refill packages to an inmate request form. The plaintiff claims, however, that he received no response.

In March 2001, the plaintiff submitted an inmate request to staff regarding vision problems that he attributed to the substitution of eye drops. As a result, he was instructed to report to sick call. There, he discussed the refill issue with the nurse, and "instructions were given by the doctor to arrange appointment with Dr. Kocher." The plaintiff claims that he asked for a refill and complained of blurred vision on April 3, 2001. On April 19, 2001, the plaintiff submitted an inmate request to staff regarding an appointment he understood had been scheduled for April 4, 2001. He reported to the acting unit manager on May 2, 2001, who spoke to Nurse Coleman and was informed that the appointment would be rescheduled. The plaintiff claims that he reported on May 24, 2001, that he still had not received Timoptic eye drops and was told that his appointment with Dr. Kocher was being rescheduled and that Dr. Kocher would refill his prescription. On June 26, 2001, the plaintiff filed a grievance to complain about the lack of medication and the failure to receive an appointment with Dr. Kocher. The plaintiff claims that by July 18, 2001, he had no sight in his left eye.

According to the plaintiff's medical records, he refused an ophthalmology appointment on December 16, 1999, for religious reasons. His medical records confirm that he was seen at the Ophthalmology Clinic on February 9, 2000, and an additional follow-up appointment was made by the ophthalmologist for June 28, 2000. The plaintiff, however, refused his appointment on June 28, 2000. His medical records report that the plaintiff continued to miss medical appointments at Lieber in 2001; specifically, he missed medical

3

appointments on April 27 and June 5, and he missed sick call appointments on June 11, June 18, and June 19.

The plaintiff's medical records further establish that he had orders for Timolol Maleate Ophthalmic 0.5% eye drops.  Dr. Sribnick reports that he did not change this prescription.  Another SCDC physician refilled the plaintiff's prescription on November 15, 2000, as Timoptic XE, which contains the same active medicine as Timolol Maleate.  According to Dr. Sribnick, the plaintiff's medical condition did not change by having Timolol rather than Timoptic drops.  The plaintiff was seen by the outside ophthalmologist on June 18, 2001.  On June 30, 2001, Dr. Sribnick renewed the plaintiff's prescriptions for Timoptic eye drops based upon his ophthalmologist's recommendation.

The plaintiff alleges that defendant Kocher is liable for his vision loss because he

> fail[ed] to provide a continuity of care to the plaintiff when he discontinued the treatment with Timoptic, did not verify that prescribed medications were being issued, allowed prescribed medications to be substituted without his authorization, allowed follow-up examinations to be canceled without explanation or justification despite his knowledge that the plaintiff face a substantial risk of serious harm.

(Compl. at 5).  He alleges that defendants Ozmint, Davis, and Burtt are responsible because they

> did not arrange for the plaintiff to be transported to the requested follow-up appointments so that the plaintiff condition could be properly evaluated to provide appropriate and timely treatment in case of medical emergency or situation, the defendants show deliberate indifference in their failure to follow the Agency policies or ACA standards when a medical need has been diagnosed by a physician as mandating treatment the necessity for a doctor's attention.

(Compl. at 5).  He further alleges that defendants Burtt, Sribnick, and Gedert

> showed deliberate indifference when they knew that plaintiff vision in his left eye was deteriorating that he face a substantial risk of going blind by failing to take reasonable measures to

4

abate it, by securing an emergency appointment with Dr. Kocher and by ordering his medication.

(Compl. at 6). Finally, he alleges that defendants Ozmint, Davis, Burtt, Sribnick, Kelly, and Gedert showed deliberate indifference to the plaintiff's serious medical needs "by failing to respond reasonably to a medical problem which caused the plaintiff permanent blindness in his Left Eye, as well as mental distress" (compl. at 7).

## APPLICABLE LAW

### *Motion to Dismiss Standard*

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support his claim and would entitle him to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted).

This court is required to construe *pro se* complaints and petitions liberally. Such *pro se* complaints and petitions are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied*, *Leeke v. Gordon*, 439 U.S. 970 (1978), and a federal district court is charged with liberally construing a complaint or petition filed by a *pro se* litigant to allow the development of a potentially meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. *Fine v. City of New York*, 529 F.2d 70, 74 (2nd Cir. 1975). Even under this less stringent standard, the complaint is subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege

5

facts which set forth a claim currently cognizable in a federal district court. *Weller v. Department of Social Services*, 901 F.2d 387 (4ht Cir. 1990).

The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).

### Motion for Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the

6

movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. V. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in her pleadings; rather, she must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiffs position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## ANALYSIS

### *Statute of Limitations*

The defendants contend that the plaintiff's claims are barred by the statute of limitations. Because §1983 does not explicitly provide its own statute of limitations, the court is to look to the personal injury statute of limitations from the relevant state. *Garrett v. Elko*, 120 F.3d 261 (4th Cir. 1997) (citing *Wilson v. Garcia*, 471 U.S. 261, 266-69 (1985)). Although the limitation period is borrowed from state law, the question of when a cause of

7

action accrues under §1983 remains one of federal law. *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (citing *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)).

The South Carolina statute of limitations for personal injuries is three years. *See* S.C. Code Ann. §15-3-530(5). Similarly, an action for medical malpractice also has a three-year statute of limitations. S.C. Code Ann.§15-3-530(5). The plaintiff complains that the defendants treated him with deliberate indifference to his medical needs, especially in 2000 and 2001. In fact, his complaint contains no allegation after July 18, 2001. The plaintiff filed this action on November 29, 2004. The plaintiff has offered no excuse for the delay. Thus, the court agrees that the plaintiff's claims are barred by the three-year statute of limitations. Out of an abundance of caution, the court will address the merits of the complaint.

### Deliberate Indifference

Deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable under 42 U.S.C. §1983 as constituting cruel and unusual punishment contravening the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Rogers v. Evans*, 792 F.2d 1052, 1058 (5th Cir. 1986). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir 1990), *cert. denied*, 500 U.S. 956 (1991).

Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts

8

recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. *Id.* Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment. *Estelle*, 429 U.S. at 106. Rather, an Eighth Amendment claim is stated by deliberate indifference in the face of pervasive risk of harm or deliberate indifference or callous indifference on the part of prison officials to a specific known risk of harm. *Pressly v. Hutto*, 816 F.2d 977 (4th Cir. 1987).

Contrary to the plaintiff's allegations, the record evidence simply does not support a claim of deliberate indifference to serious medical needs. The plaintiff has failed to show that he had any serious medical need to which the defendants responded with deliberate indifference. Rather, the record evidence reveals that it was *the plaintiff* who appears to have had a practice of refusing scheduled medical appointments, thus hampering the defendants' efforts to provide medical care to the plaintiff. Moreover, there is no showing that the plaintiff suffered ill effects from the substitution of Timolol eye drops for Timoptic drops. Indeed, in his affidavit, Dr. Sribnick explains that Timoptic is a form of Timolol and that the plaintiff's condition would not have changed by having one form of Timolol over another. The plaintiff has presented no evidence to the contrary. Consequently, summary judgment as to this claim is appropriate.

A claim of deliberate indifference to serious medical needs requires a greater showing than made here, even if it were to be assumed that the plaintiff's medical needs were serious and that a finding of negligence on the part of the defendant could be supported by the evidence. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Estelle*, 429 U.S. at 106. Here, the plaintiff has submitted no evidence at all to support his claims. Indeed, the United States Supreme Court has explained:

> Since, we said, only the "unnecessary and *wanton* infliction of pain" implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege "deliberate

9

> indifference" to his "serious" medical needs.  It is *only* such
> indifference that can violate the Eighth Amendment; allegations
> of "inadvertent failure to provide adequate medical care," or of
> a "negligent . . . diagnosis," simply fail to establish the requisite
> culpable state of mind.

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (*quoting Estelle*, 429 U.S. at 104-106) (citations omitted).  The plaintiff's claims of improper treatment, without more, are insufficient to establish a violation of §1983.

If anything, the plaintiff has raised allegations of medical malpractice.  Section 1983 provides a remedy for violations or deprivations of rights secured by the Constitution or other laws of the United States, not ordinary state torts.  *See Maine v. Thiboutot*, 448 U.S. 1 (1980).  A §1983 claim is not the proper remedy for an ordinary state tort claim. *Tucker v. Duncan*, 499 F.2d 963 (4th Cir. 1974).  Thus, to the extent that the plaintiff has asserted a medical malpractice claim against the defendants, it should be dismissed.[2]


**Qualified Immunity**

The defendants have also raised the defense of qualified immunity.  Qualified immunity protects government officials performing discretionary functions from suits for civil damages arising out of the exercise of their discretionary functions, provided that their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)). The plaintiff's rights must be established so clearly that a "reasonable official would understand that what he is doing violates that right."  *Slattery*, 939 F.2d at 216 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987)).

---

[2] In fact, the plaintiff did file a medical malpractice action in state court that was dismissed.  As an additional ground for dismissal, the defendants have argued that the doctrine of *res judicata* precludes the plaintiff's §1983 action in federal court.  Because this court finds that this action should be dismissed on other grounds, it is not necessary to address this argument.

Accordingly, ruling on a defense of qualified immunity requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).[3]

In determining whether the specific right allegedly violated was clearly established, tolerance is accorded in the qualified immunity defense to "'good faith' mistakes of judgment traceable to unsettled law, or faulty information, or contextual exigencies. . . [which] is deliberately designed to give protection to 'all but the plainly incompetent or those who knowingly violate the law.'" *Pritchett*, 973 F.2d at 313 (citing *Malley v. Briggs*, 475 U.S. 335, 341, 89 L.Ed.2d 271, 106 S.Ct. 1092 (1986)).

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne,* 526 U.S. 286, 290 (1999); *see also Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson,* 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott,*

---

[3]In order to shield officials from both the burdens of litigation as well as liability, establishment of qualified immunity is encouraged at the summary judgment stage. *Pritchett*, 973 F.2d at 313 (citing *Harlow,* 457 U.S. 800, 815-819). However, summary judgment remains appropriate "only if (1) there are no genuine issues of material fact, and (2) on the undisputed facts the defendant as movant is entitled to judgment as matter of law." *Pritchett*, 973 F.2d at 313 (citations omitted). Thus, it is appropriate to consider the third element of a qualified immunity defense (i.e., whether a reasonable officer would have known that his conduct violated a specific right) only if there are no genuine issues of fact with respect to the official's conduct under the circumstances. If issues of fact do exist, summary judgment is inappropriate, and the issue must be reserved for trial. *Pritchett*, 973 F.2d at 313 (citing *Mitchell,* 472 U.S. at 526).

156 F.3d 563, 567 (4th Cir. 1998); *see also Young v. City of Mount Rainier*, 238 F.3d 567, 577-78 (4th Cir. 2001) (where court concluded that the complaint did not allege a constitutional violation, there was no need to consider the question of qualified immunity).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendants violated any of his constitutional rights. Therefore, to the extent that the plaintiff is suing the defendants in their individual capacities, the defendants are entitled to qualified immunity on these claims.

## CONCLUSION AND RECOMMENDATION

Wherefore, it is recommended that the defendants' motion for summary judgment be granted. It is further recommended that Dr. Gray A. Kocher be dismissed as a defendant, as he has not been properly served in this action.

s/William M. Catoe
United States Magistrate Judge

September 22, 2005

Greenville, South Carolina

12